In re MASNORTH CORP., a/k/a the Courtyard Shopping Center, Debtor.

The MIDLAND MUTUAL LIFE INSURANCE COMPANY, Plaintiff,

v.

MASNORTH CORP., a/k/a The Courtyard Shopping Center, Defendant.

Bankruptcy No. 82–00992A.
Adv. No. 82–2675A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 12, 1984.

See also, Bkrtcy., 28 B.R. 892.

Ron L. Quigley, Davis, Matthews & Quigley, P.C., Atlanta, Ga., for plaintiff.

Alfred G. Adams, Jr., James B. Jordan, Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

In this Chapter 11 proceeding, the debtor, Masnorth Corp. ("Masnorth"), cured and reinstated a mortgage contract with its sole secured creditor, The Midland Mutual Life Insurance Company ("Midland"). Two issues are presently before the Court: (1) Midland's application for actual attorney's fees and reimbursement of expenses; and (2) Midland's contention that Masnorth must perform certain deferred maintenance as a condition of cure and reinstatement. An evidentiary hearing was held on September 20, 1983, following which these matters were taken under advisement.

Masnorth filed its voluntary Chapter 11 petition on March 2, 1982. At that time, Masnorth was two payments in arrears to Midland. Masnorth's plan of reorganization proposed to pay Midland all arrearages in cash on the effective date of the plan. However, Midland filed a complaint for relief from stay and an objection to confirmation alleging that: (1) Masnorth failed to provide for deferred maintenance on the property; (2) Masnorth failed to provide for the payment of statutory attorney's fees under the Official Code of Georgia § 13–1–11; (3) Masnorth failed to offer Midland the current market interest rate on mortgage arrearages and on the reinstated mortgage principal; and (4) Masnorth allegedly failed to comply with § 1129(a)(10) of the Bankruptcy Code, which requires that at least one class of claims has accepted the plan without including any acceptance of the plan by an insider holding a claim of such class.

The Court's Order dated April 6, 1983 sets forth a lengthy analysis of the Court's decision to reject the latter three arguments raised by Midland. Although the Court denied Midland's claim for statutory attor-

ney's fees, the Court stated that "Midland is entitled to reasonable attorney's fees as provided under its mortgage and note." *The Midland Mutual Life Insurance Company v. Masnorth Corp. (In re Masnorth Corp.)*, 28 B.R. 892 (Bkrtcy.N.D.Ga.1983). The same Order confirmed Masnorth's plan of reorganization and expressly reserved ruling on the reasonable attorney's fees and the deferred maintenance issues.

## ATTORNEY'S FEES

A significant factor in the Court's denial of statutory attorney's fees was the finding that *In re East Side Investors*, 694 F.2d 242 (11th Cir.1982), petition for rehearing denied, 702 F.2d 214 (11th Cir., April 4, 1983), is distinguishable from the case *sub judice*. In *East Side Investors*, the Eleventh Circuit Court of Appeals held that a creditor was entitled to statutory attorney's fees where a debt was collected through the debtor's Chapter XII proceeding pursuant to the provisions of a consent decree entered by the parties after the commencement of the bankruptcy case. In the instant case, the mortgage debt was cured and reinstated.

This Court endorsed the treatment of cure and reinstatement outlined by the United States Court of Appeals for the Second Circuit in *In re Taddeo*, 685 F.2d 24 (2d Cir.1982). *Taddeo* is a Chapter 13 case in which the debtor was permitted to deaccelerate a mortgage default and reinstate the loan. The Second Circuit stated that curing a default returns the parties to a pre-default position, thereby repealing the contractual consequences of default. *Id.* at 26–27. This analysis was instrumental to the Court's conclusion that statutory attorney's fees may not be claimed in the context of a cure and reinstatement.

■ Under Georgia law, statutory attorney's fees are governed by Official Code of Georgia § 13–1–11, which states that:

(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as part of such debt if such note or other evidence

of indebtedness is collected by or through an attorney *after maturity,* subject to the following provisions . . .

Applying the *Taddeo* analysis, the primary consequence of default—acceleration—is reversed by cure and reinstatement. Therefore, the debt is not *mature* within the meaning of Official Code of Georgia § 13–1–11, and statutory attorney's fees do not attach as a lien against the subject property. This treatment of cure and reinstatement comports with the rehabilitative purposes of Chapters 11 and 13 of the Bankruptcy Code, both of which contain cure and reinstatement provisions.

Another case dealing with cure and reinstatement by a Chapter 11 debtor is noteworthy. *In re Hewitt*, 16 B.R. 973, 5 CBC 2d 1626 (Bkrtcy.D.Alaska 1982). In *Hewitt*, the case was before the Court on a creditor's complaint for relief from the automatic stay. Prior to the debtor's bankruptcy filing, the creditor had accelerated the debt and obtained a judgment of foreclosure on the property securing the indebtedness. The Bankruptcy Court concluded that, despite the judgment of foreclosure, the debtor was entitled to cure and reinstate the debt. The Court denied the complaint for relief from stay, finding that the creditor had an equity cushion in excess of $300,000 and that the property was necessary to an effective reorganization. *Hewitt* is consistent with this Court's interpretation of cure and reinstatement under Chapter 11.

*Hewitt* is directly applicable to the attorney's fees issue in the instant case. The Court in *Hewitt* correctly noted that the creditor who had obtained a judgment of foreclosure was entitled to compensation for attorney's fees and expenses incurred in bringing the foreclosure action. Section 1124(2)(C) provides that a creditor which is entitled to acceleration under the contract is deemed impaired unless a plan to cure and reinstate "compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder of such contractual provision . . ." *Hewitt* represents a classic example of a creditor entitled to compensation under

1124(2)(C). Notably, the Court in *Hewitt* made no reference to compensating the creditor for the costs of bringing its complaint for relief from the automatic stay. Yet, Midland requests such relief from this Court.

■ This Court holds that the attorney's fees and expenses incurred by Midland are not compensable under § 1124(2)(C) because those costs were not incurred in *reliance* upon the acceleration provision of the contract. Once Masnorth filed bankruptcy and the automatic stay became effective, Midland was no longer entitled to rely upon the acceleration provision of the contract, notwithstanding the fact that Masnorth's default and Midland's right to acceleration, absent the intervention of bankruptcy, were integral to Midland's claims before this Court.

■ The Senate has recognized the favored position of a creditor whose debt is being cured and reinstated relative to the position of other classes of creditors, which might receive only a fraction of their claims:

[A] claim or interest is unimpaired by curing the effect of a default and reinstating the original terms of an obligation when maturity was brought on or accelerated by the default. The intervention of bankruptcy and the defaults represent a temporary crisis which the plan or reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or nothing at all, is fortunate indeed and has no cause to complain. Curing the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims, especially secured claims.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 120 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5906. Clearly, the creditor in *Hewitt* would not have been made whole had the debtor not been obligated to assume the costs incurred in obtaining the judgment of foreclosure. Since cure and reinstatement nullified the effect of obtaining a judgment of foreclosure, the Bankruptcy Code justifiably requires the debtor to pay those costs as part of a plan to cure and reinstate. However, § 1124(2)(C) was not intended to otherwise differentiate creditors whose claims are being cured and reinstated from other classes of creditors before this Court. Absent a contractual provision requiring the debtor to pay attorney's fees, creditors generally must bear their own expenses of appearing before this Court.

Under § 506(b) of the Bankruptcy Code, an oversecured creditor may collect reasonable attorney's fees and expenses as provided in the agreement under which the secured claim arose. Clause 1.08 of Midland's security deed provides that:

The borrower [Masnorth] will pay or reimburse the lender [Midland] for all reasonable attorney's fees, costs and expenses incurred by the lender in any proceedings involving the estate of a decedent or an insolvent, or in any action, legal proceeding or dispute of any kind in which [Midland] is made a party, or appears as party plaintiff or defendant, affecting the indebtedness secured hereby, this deed or the interest created herein, or the premises, including but not limited to the exercise of the power of sale of this deed, any condemnation action involving the premises or any action to protect the security hereof; and any such amounts paid by [Midland] shall be added to the indebtedness secured by the lien of this deed.

The Court's April 6, 1983 Order recognized this contractual provision as a basis for Midland's attorney's fees claim. However, the Court stated that:

The right to recovery of actual pecuniary losses where a default is cured contemplates good faith and reasonableness on the part of a creditor in protecting its interest.

*In re Masnorth Corp.*, 28 B.R. at 897.

■ Midland's fourth supplemental application for attorney's fees shows that a total of $37,925.60 is requested by Midland for

litigating before this Court. Meanwhile, the debtor incurred approximately $24,000.00 in attorney's fees and expenses defending against Midland's actions. This Court is compelled, as a court of equity, to limit Midland's fees according to a reasonableness standard which supplements the Court's scrutiny of fee applications under *In re First Colonial Corporation of America*, 544 F.2d 1291 (5th Cir.1977) and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The Court determines that Clause 1.08 of the security deed is intended merely to make the lender whole in the event that the lender is forced to incur attorney's fees and expenses to protect its interest. While Midland is free to assert all bona fide claims before the Bankruptcy Court, Midland is not necessarily entitled to saddle the debtor with all the attorney's fees and expenses incurred so as to impede the debtor's ability to reorganize.

The Court finds that the pervasive reason for Midland's objection to Masnorth's proposed cure and reinstatement was Midland's dissatisfaction with the 9½% interest rate on the loan to Masnorth. The Court is not asserting that Midland brought frivolous claims before this Court. Rather, the issues decided by the Court with regard to statutory attorney's fees, the applicable interest rate on arrearages and reinstated principal, and compliance with § 1129(a)(10) were complex and without precedent in this district. But, this Court focuses upon Midland's motivation for raising these issues. Midland admitted an equity cushion in excess of $100,000 as of the December 1, 1982 confirmation hearing. Therefore, Midland's right to recourse against the property has not seriously been in jeopardy throughout the bankruptcy proceeding.

■ The Court rejects Masnorth's suggestion that the contractual obligation to compensate Midland for actual pecuniary losses ceased at the time an offer to cure and reinstate was extended to Midland. Midland's right to protect its interest and to be reimbursed under the contract cannot be tied to such an arbitrary date. The reasonableness of opposing a plan might well extend beyond the date the plan is proposed. But, the primary consideration in this case is the availability of recourse against the collateral in the event that the plan to cure and reinstate had failed to become effective.

Mr. Terry Walsh, an expert witness testifying on behalf of Midland at the September 20, 1983 hearing, stated that equity is a fleeting concept and may vary according to the method of valuation employed. See Transcript of September 20, 1983 hearing at 29–30. The Court acknowledges that Midland was partially justified in seeking relief from the stay and/or objection to confirmation. Moreover, Midland was entitled to seek its contractual right to statutory attorney's fees, despite the fact that the Court ultimately decided that statutory attorney's fees should not be awarded. However, by the admission of Mr. Quigley of Davis, Matthews & Quigley, P.C., counsel for Midland, the quest for statutory attorney's fees was far outweighed by Midland's desire to obtain a market rate of interest. See Transcript of September 20, 1983 hearing at 44.

Mr. Quigley's statement again illustrates Midland's overriding concern to free its principal from the 9½% loan to Masnorth. At the time of the December 1, 1982 confirmation hearing, the principal amount owed by Masnorth was approximately $450,000. Obviously, Midland would have been greatly advantaged by obtaining the market rate of interest on such a large amount of principal. Mr. Walsh testified that he would have pursued the same actions taken by Midland without consideration of the possibility that Masnorth might be required to reimburse Midland for attorney's fees and expenses. Transcript of the September 20, 1983 hearing at 17, 28.

Assuming that Mr. Walsh's testimony is accurate that reliance upon the attorney's fees clause was not a motivating factor, and assuming that the issue of statutory attorney's fees was only a minor concern, would a reasonable creditor have spent $38,000 of its own money to "protect" its $450,000 stake in real property with an admitted equity cushion in excess of $100,000? This

Court answers that question in the negative. As to the surplusage, Midland must bear its own attorney's fees and expenses.

The Court reviewed the extensive timesheet submitted by Midland with its fee application. Midland's application complies with the guidelines set forth in *First Colonial*. The only factor in that case which weighs against the instant fee application is the unfavorable results obtained by counsel for Midland. Further elaboration on the *First Colonial* standard is unnecessary because the Court imposes a more stringent limitation under the reasonableness standard articulated herein.

In accordance with the foregoing analysis, and in the exercise of its discretion, the Court hereby awards attorney's fees and expenses to Midland in the amount of $15,000, said amount having been reasonably incurred to protect Midland's interest in light of Masnorth's decision to file bankruptcy and the preclusion of Midland's right to accelerate the debt and foreclose under state law.

## DEFERRED MAINTENANCE

Midland contends that Masnorth's plan of reorganization must cure an alleged default in Masnorth's contractual obligation to care for the subject property. The relevant portion of Clause 1.05(a) of the security deed states that "[t]he Borrower [Masnorth] will keep the improvements now or hereafter erected on the premises in good condition and repair...". However, Midland has presented no authority for its position that the current state of the property contravenes the contractual duty of good repair.

■ Section 1124(2)(A) provides that a creditor is impaired unless the plan to cure and reinstate

cures any default, other than a default of a kind specified in § 365(b)(2) of this title, that occurred before or after the commencement of the case under this title.

Section 1124(2)(A) contemplates the cure of all defaults, including non-monetary defaults. Therefore, Midland is deemed impaired unless Masnorth complies with its contractual duty.

The uncontradicted testimony of Mr. Dahl Cochran, manager of the subject property, is that approximately $11,000 was spent on repairs during the three months preceding the December 1, 1982 confirmation hearing. The remainder of the evidence is conflicting. Midland has introduced three different experts, each of which testified to a different amount of deferred maintenance that they would recommend the debtor perform. The principal defects in the property are: (1) allegatoring of the parking lot and driveway; (2) disrepair of the lookouts; and (3) inadequate exterior painting.

■ The Court heard extensive testimony that Masnorth's failure to resurface the parking lot will eventually cause severe damage, necessitating a large expenditure in the future. The present cost of resurfacing the parking lot and driveway was estimated by Mr. Maslia, one of Midland's experts, to be $13,000. Masnorth has chosen, instead, to patch holes in the parking lot as they develop. Midland has not contended that the parking lot and driveway are not serviceable at this time. Hence, the alligatoring of the asphalt does not constitute a condition of default.

■ Midland has also testified to the prudence of replacing the lookouts and boxing in the eaves at a cost of $6,400. Midland contends that, if these repairs are not made, much more expensive damage will result to the roof. However, the Court finds that the lookouts are not in an immediate state of disrepair in violation of Masnorth's contractual duty. Similarly, the evidence before the Court does not show that the alleged inadequacy exterior painting is a condition of contractual default.

For the foregoing reasons, the Court finds that Masnorth is not obligated to make any further expenditures on property maintenance as a condition to the cure and reinstatement of its debt to Midland.

IT IS SO ORDERED.