**In re WEST ELECTRONICS, INC., Debtor.**

**Bankruptcy No. 86–07871.**

United States Bankruptcy Court, D. New Jersey.

Sept. 9, 1993.

Richard L. Schepacarter, Lesser & Kaplin, P.C., Marlton, NJ, for plaintiff, Midlantic Nat. Bank.

Kathryn Ferguson, Markowitz & Zindler, Lawrenceville, NJ, for debtor, West Electronics, Inc.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

This matter comes before the court on an application for compensation by counsel for creditor Midlantic National Bank seeking attorneys' fees and costs pursuant to 11 U.S.C. § 506(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This court, therefore, has jurisdiction under 28 U.S.C. § 1334.

### PROCEDURAL HISTORY AND STATEMENT OF FACTS

The debtor-defendant in this case, West Electronics, Inc. ("West") filed a voluntary Chapter 11 bankruptcy petition in the District of New Jersey on December 19, 1986. West's owners, Frank S. Brainard, Jr., and Harriet S. Brainard, also filed a voluntary Chapter 11 petition on May 28, 1987.

To help finance West's operations, the Bankruptcy Court entered an Order on April 20, 1988 authorizing West to borrow, post-petition, $600,000.00 from the creditor-plaintiff, Midlantic National Bank ("Midlantic"), which was 90% guaranteed by New Jersey Economic Development Authority ("NJEDA"). West's promissory note to Midlantic contained a provision that the "[m]aker shall pay on demand all costs of collection (including reasonable attorneys' fees and expenses) paid or incurred *by Midlantic* in enforcing this Note." (emphasis added). The loan was also personally guaranteed by Frank and Harriet Brainard with another mortgage against their house. The Order authorizing the Brainards to guaranty the loan required monthly payments of $4,000.00 and the sale or refinance of their home by February, 1990 in order to satisfy the Midlantic mortgages. West repaid $120,000.00 of the principal of

the super priority loan from Midlantic but was unable to make payments after April, 1990. The NJEDA paid Midlantic its 90% of the remaining outstanding principal on May 27, 1991, leaving due a principal balance of $48,000.00.

As a result of West's default under the post-petition loan and the Brainards' violation of orders requiring payment, Midlantic proceeded to file thirteen motions with the Bankruptcy and District Courts against both West and the Brainards. These included an original June 6, 1991 Motion for Relief in the Bankruptcy Court, which the Court denied; an appeal to the District Court, in which that Court affirmed the determination of the Bankruptcy Court; a Motion to Intervene in the Insurance Adversary Proceeding, which was settled by an order; and, a Motion of Mandamus, which the court denied. A consent order finally settled the appeal to the Third Circuit Court of Appeals. The December 14, 1992 consent order for Relief and Settling Claims stated that the post-petition loan of $600,000.00 to West from Midlantic should be satisfied in full, (including attorneys' fees) by West from the anticipated insurance litigation settlement proceeds on or before December 30, 1992. The settlement sum was $750,000.00. In addition, West was to attempt to sell its business premises or to provide Midlantic with a Deed by June 30, 1993. For the most part, these actions were unsuccessful, and the ultimate determination was that payment was to be made at the time of the resolution of the insurance litigation which the debtor had instituted in order to recover the value of certain pre-petition property.

On April 9, 1993, attorneys for Midlantic, Lesser & Kaplin, P.C., filed an application for compensation of attorneys' fees of $130,205.00 and expenses of $12,284.10 for the period of 12/11/90—12/30/92.

### QUESTIONS PRESENTED

The questions for determination are narrow. As a threshold issue, this court must decide whether a secured creditor is entitled to compensation under 11 U.S.C. § 506(b) for services rendered in connection with unsuccessful motions and other actions. If the court answers this question in the affirmative, before it grants compensation, it must then determine whether the creditor's actions were reasonable in securing its interest.

### DISCUSSION

### I. SUCCESS IS NOT A PREREQUISITE

■ The creditor seeks an award of attorneys' fees pursuant to United States Bankruptcy Code Section 506(b). This section provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b).

Fees of this nature, as is true with the fixing of fees for all professionals with which this court is charged, are set forth in Federal Rule of Bankruptcy Procedure 2016(a). Rule 2016(a) provides, in pertinent part:

(a) **Application for Compensation or Reimbursement.** An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Fed.R.Bankr.P. 2016(a). Neither § 506(b) nor Rule 2016(a) require a successful motion for this court to award attorneys' fees. This court, therefore, must turn to case law for the proper interpretation.

The debtor-in-possession argues that the creditor should not be reimbursed for legal fees incurred on matters in which it was not the prevailing party. The debtor relies on language in the case of *In re Roberts*, 20 B.R. 914 (Bankr.E.D.N.Y.1982), where

Judge Cecilia H. Goetz refused to reimburse a secured Chapter 13 creditor during a foreclosure proceeding and reasoned that "since the debtors were the prevailing party with respect to some of the issues, it is therefore, most appropriate that each side bear its own costs." *Id.* at 922.

Debtor's reliance on *Roberts* is misplaced. In *Roberts,* the secured creditor's attorney's fees were denied mainly because the creditor had violated the automatic stay, and the provision for payment of attorney's fees did not include the Chapter 13 foreclosure proceeding. *Id.* at 921. Thus, the court did not award attorney's fees because the underlying action itself was unreasonable, and not because the action was unsuccessful.

■ The debtor-in-possession also contends it is the prevailing party who is *prima facie* entitled to costs, and therefore, the creditor cannot recover for previous unsuccessful motions. The debtor looks to *In re Northern Ind. Oil Co.,* 192 F.2d 139, 140 (7th Cir.1951), where the bankruptcy trustee petitioned for an order requiring respondent to turn over certain property subleased to it prior to filing the bankruptcy petition. In analyzing its decision to later award costs to the respondent, Circuit Judge Finnegan stated:

> In equity, however, the awarding of costs depends largely upon the facts and circumstances of each particular case and rest within the discretion of the court. Unless otherwise provided by statute or rules of court, costs in equity do not always follow the outcome of the suit; they rest in the sound discretion of the court according to the justice of the cause or the facts and circumstances of the particular case. The prevailing party is, however, prima facie entitled to costs, and it is incumbent on the unsuccessful party to show circumstances sufficient to overcome the presumption. A bankruptcy court is a court of equity within this rule.

*Id.* at 142. Accordingly, in the case at bar, Midlantic must prove the reasonableness of the unsuccessful motions to overcome the *prima facie* case presumption.

Midlantic argues, and this court agrees, that it meets the first three of the four requirements distilled from Section 506(b) that must be satisfied in order for attorney's fees and costs to be allowed as part of a creditor's claim: (1) the creditor must have an allowed, secured claim; (2) the creditor must be oversecured; (3) the underlying documents must provide for such fees and costs; and (4) the amount of the claim for fees and costs must be reasonable. *In re Wire Cloth Prods., Inc.,* 130 B.R. 798, 814 (Bankr.N.D.Ill.1991). However, the issue arises as to whether the conduct of the attorneys, and not the amount of fees, was reasonable, and whether the creditor should be compensated for attorneys' fees incurred for previous unsuccessful motions.

■ Reasonableness has two facets: (1) the itemized fees themselves must be reasonable, and (2) the creditor's actions must be reasonable. *Id.* at 464. Unsuccessful, oversecured creditors like Midlantic, however, may be entitled to attorneys' fees under § 506(b) so long as these two prongs are met. *See, e.g., In re Mills,* 77 B.R. 413, 418 (Bankr.S.D.N.Y.1987); *In re Brunel,* 54 B.R. 462, 464 (Bankr.D.Colo. 1985); *In re Harmon Supermarket, Inc.,* 44 B.R. 918 (Bankr.W.D.Va.1984); *In re American Metals Corp.,* 31 B.R. 229 (Bankr.Kan.1983); *In re Carey,* 8 B.R. 1000 (Bankr.S.D.Cal.1981). Fees will not be denied solely because a reasonable motion is unsuccessful. *Brunel,* 54 B.R. at 464. *See also Mills,* 77 B.R. at 415 (court pointing out that § 506(b) constitutes an exception to the "American Rule" which requires litigants to bear the cost of their own legal fees and expenses).

In sum, this court agrees with the creditor's position in *Brunel* and cases which held that "there is considerable precedent for allowing attorney's fees ... even though the motion is unsuccessful or never ruled on." *Brunel,* 54 B.R. at 465; *Mills,* 77 B.R. at 418. With the issue of possible compensation for unsuccessful motions answered in the affirmative, this court must next determine whether the creditor in the

present case was reasonable in the actions themselves.

## II. REASONABLENESS OF ACTIONS

 The debtor asserts that the creditor should not be compensated for the attorneys' fees related to the unsuccessful motions because the creditor's motivation was for strategic purposes only. Debtor's counsel points to *Midland Mut. Life Ins. Co. v. Masnorth Corp.*, 36 B.R. 335 (Bankr. N.D.Ga.1984), where an oversecured creditor filed a complaint for relief from stay and objected to the Chapter 11 Plan even though its collateral was not threatened. The court concluded that part of the requested attorney's fees was unreasonable, despite being non-frivolous actions, because the creditor's real motivation for the cause of action was its dissatisfaction with the loan's interest rate. The court determined that a creditor must not impede debtor's reorganization by saddling the debtor with attorney's fees and expenses. *Id.* at 339.

In the present case, the debtor admits to the creditor's oversecured lien, but points out that only approximately $48,000.00 was ever really at risk and that is all that remains due on the post-petition loan. The debtor further argues the award of attorneys' fees should be limited to those fees actually incurred in connection with the attempt to protect or regain the collateral posted for the post-petition financing. *In re Lawson*, 48 B.R. 31 (Bankr.W.D.Va. 1985). The debtor questions the reasonableness of the creditor spending approximately $140,000.00 for its remaining post-petition interest of approximately $48,-000.00 and contends that the only reasonable explanation for the expenditure was that the creditor's actual motive was to use the default under the post-petition obligation to enhance its position with respect to its pre-petition loan.

On the other hand, Midlantic asserts that an award of attorneys' fees is reasonable and justified if the amount is commercially reasonable. Courts have applied this test in awarding attorney's fees under § 506(b) despite debtor's objection that the actions of the secured creditor were unnecessary and unreasonable in light of the creditor's secured status. *In re Minnesota Distillers, Inc.*, 45 B.R. 131, 135 (Bankr.D.Minn. 1984). In *Minnesota Distillers*, the debtor contended that the secured creditor's goal was to force the debtor to repay immediately, thereby violating the debtor's rights under the Bankruptcy Code. The court concluded that the actions of the creditor were reasonable because such actions were needed to protect their interests and were not overly aggressive since the secured position was uncertain. *Id.* at 137.

As in *Minnesota Distillers*, the creditor in this case claims that the previous unsuccessful motions were commercially reasonable because of the need to protect its interests and to enforce the note. Midlantic claims future and prospective payment was doubtful because of previous defaults. The 1991 stay motion was filed because of defaults, and the motion to intervene in the insurance litigation and the mandamus motion were filed to protect the creditor's interest in the collateral. The creditor stresses that the ultimate settlement requiring 100% payment of the post-petition loan provides strong evidence that the creditor's actions were commercially reasonable.

 From the facts, while the court cannot conclude that the motion of the creditor was inappropriate, this court can conclude that the creditor's actual remaining post-petition balance due was $48,-000.00. The debtor's last payment was $120,000.00 in April, 1990, and the NJEDA paid its 90% guaranty of $432,000.00 on May 27, 1991. Therefore, after May 27, 1991, the creditor was never at risk for more than $48,000.00. Both parties agree that the previous unsuccessful motions, while all done after the EDA guaranty was paid, were legal. Nevertheless, the court needs to find a good faith necessity to justify full compensation of attorneys' fees. This court must look at whether the creditor's fees and costs fall within the scope of the fee provision, whether the creditor took the kind of reasonable actions a similarly situated creditor would have taken, and whether such actions and fees were outside

the range so as to be deemed unreasonable. *In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987).

This court agrees that these unsuccessful motions fall within the fee provision itself. A problem arises, however, as to the range and the reasonableness of the actions themselves. For this determination, bankruptcy courts have used the twelve factors set forth in the civil rights case, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney's; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Many bankruptcy courts have particularly utilized the "results obtained" factor. *See, e.g., In re Property Co. of Am. Joint Venture*, 110 B.R. 244, 250–51 (Bankr. N.D.Tex.1990); *In re Robertson Cos.*, 123 B.R. 616, 618 (Bankr.D.N.D.1990); *In re Wash. Mfg. Co.*, 101 B.R. 944 (Bankr. M.D.Tenn.1989); *In re Microwave Prods. of Am., Inc.*, 104 B.R. 900 (Bankr. W.D.Tenn.1989); *In re Global Int'l Airways Corp.*, 38 B.R. 440, 442–43 (Bankr. W.D.Mo.1984); *In re Werth*, 32 B.R. 442, 445 (Bankr.D.Col.1983). The Third Circuit has also adopted this standard in *Lindy I* and *Lindy II: Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir.1973) and *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 114 (3d Cir.1976).

In the present case, the problem arises with the fact that the loan was 90% guaranteed by NJEDA and by the Brainard home.

Midlantic only had $48,000.00 at risk but chose to spend three times that amount to "protect" itself. This court concludes that the attorneys for the creditor, who are familiar with both bankruptcy and district court proceedings, should have realized that their fees and expenses would be significantly larger than the actual risk. Thus, it was unreasonable for the attorneys to spend this time and labor on motions costing them much more than the $48,000.00.

■ The bankruptcy court is granted a substantial degree of discretion in assessing the reasonableness of claimed fees and costs. This court finds that the creditor's past motions were not filed to protect its post-petition interests and the actions had the effect of frustrating the bankruptcy proceedings. *In re Wonder Corp. of Am.*, 82 B.R. 186, 192 (Bankr.D.Conn.1988). This court also agrees with Bankruptcy Judge W. Homer Drake's conclusion that the plaintiff "is free to assert all bona fide claims before the Bankruptcy court," however, the plaintiff "is not necessarily entitled to saddle the debtor with all the attorney's fees and expenses incurred so as to impede the debtor's ability to reorganize." *Midland Mut. Life Ins. Co. v. Mansnorth Corp.*, 36 B.R. 335, 339 (Bankr.N.D.Ga. 1984). This court finds that the creditor went beyond that which was necessary to obtain the remaining balance. The creditor was aware the debtor was in the process of settling matters in an attempt to settle creditor's claim, but instead of allowing the debtor to carry out its efforts, the creditor loaded it down with excessive motions.

## CONCLUSION

This court concludes that the application for compensation for the unsuccessful motions must be denied in part. Therefore, the law firm of Lesser & Kaplin is allowed the sum of $25,000.00 in fees and expenses, representing the reasonable amount incurred in protecting the post-petition interest of $48,000.00, as well as actions taken to insure their position before May 27, 1991, the date of the EDA payment. Reductions were made for unnecessary and

unreasonable actions, frustration of the bankruptcy proceedings, and the impeding of the debtor's ability to reorganize.