In re Lawrence Edward **BEYER**, Debtor.

Bankruptcy No. 92–25365–D.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

July 11, 1994.

Steve Ragland, Heiskell, Donelson, Bearman, Adams Williams & Kirsch, Memphis, TN, for First Tennessee.

Jimmy Croom, U.S. Trustee, Memphis, TN.

Michael P. Coury, Laughlin, Halle, McBride, Lunsford, & Fletcher, Memphis, TN, for Trustee.

### MEMORANDUM OPINION AND ORDER RE APPLICATION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION PURSUANT TO 11 U.S.C. § 506(B) AND OBJECTIONS THERETO

BERNICE BOUIE DONALD,
Bankruptcy Judge.

This core proceeding [1] came on for hearing on the application of First Tennessee National Association ("First Tennessee") seeking payment of certain fees and expenses in the amount of $28,715.67 pursuant to its secured claim. The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This Memorandum Opinion and Order is issued pursuant to F.R.B.P. 7052.

The singular issue for judicial determination is whether the fees and expenses incurred by First Tennessee in the amount of $29,276.35 [2] were reasonable and necessary such that they should be paid by the bankruptcy estate.

### THE FACTUAL SUMMARY

On May 18, 1992, the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code seeking a discharge of certain debts and a fresh start. At the time of the petition filing, debtor was a party to certain litigation pending in the Chancery Court of Shelby County brought by Thomas Barrett Hannah, a creditor. First Tennessee, a secured creditor of the Debtor, filed a motion seeking relief from the automatic stay and for abandonment, which was duly heard by the Court. First Tennessee sought permis-

---

1. 28 U.S.C. § 157(b)(2)(A).

2. First Tennessee claimed fees in the amount of $28,192.99 and expenses in the amount of $1,083.36, for a total of $29,276.35.

sion to liquidate its collateral, a Certificate of Deposit, ("Timed Deposit"), and satisfy its debt.

The proof presented during the December 8, 1992 hearing on First Tennessee's Motion for Abandonment and Relief From Automatic Stay established that, prior to Debtor's bankruptcy filing on May 18, 1992, Debtor executed two promissory notes made payable to the order of First Tennessee. Debtor executed two security agreements granting First Tennessee certain rights and interests with respect to, among other things, two time deposit accounts at First Tennessee (one in Debtor's name and one in the name of both Debtor and Marjorie J. Beyer), and funds were on deposit in Debtor's name at First Tennessee in time deposit accounts. The underlying agreement allowed for attorneys' fees and costs attendant to collection of the debt. At the time of the petition filing, First Tennessee's claim was $28,707.70.

The proof established that, as of December 8, 1992, the total amount due and owing to First Tennessee from Debtor (excluding attorneys' fees, costs and expenses) was $30,116.10, that the daily interest accrual was $5.94 and that the total amount in the time deposit accounts at First Tennessee was $59,000.

The proof further established that the time deposit accounts at First Tennessee could be used as a source of repayment of the loans, that First Tennessee had the exclusive power to apply the time deposit accounts to the amounts owed to First Tennessee and that, in connection with the loan transactions, First Tennessee did not issue "certificates of deposit" as that term is defined in the UCC.

On December 22, 1992, the Court issued an Order Granting First Tennessee's Motion for Abandonment and Relief from the Automatic Stay. The Court's order granted First Tennessee permission to apply the proceeds of the Certificates of Deposit to its debt. After that application, a balance of $28,715.67 remained. First Tennessee was allowed to retain the balance to apply to its fees and expenses pending this Application and a determination by the Court of reasonableness. The balance was allowed held by First Tennessee's counsel in its trust account. Han-

nah, through counsel, appealed the Order of the bankruptcy court.

## DISCUSSION

11 U.S.C. § 506(b) provides that an oversecured creditor is entitled to payment of reasonable fees, costs, and charges so long as the relevant agreements between the parties provide for such payment, and so long as such amounts are reasonable.

The Court in evaluating the reasonableness of the instant fees, has duly considered, among others, the following factors:

(1) the nature, extent, length and value of the services rendered;

(2) the bankruptcy and non-bankruptcy experience, reputation, and ability of the attorneys;

(3) awards in similar cases;

(4) the novelty and difficulty (or lack thereof) of the questions presented;

(5) the skill requisite to perform the legal services properly;

(6) the customary fee;

(7) professional time actually spent;

(8) amount involved in potential risk;

(9) the results of the cases;

(10) specialty in which the attorneys may be practicing;

(11) fees sought to be applied;

(12) distinction between partner and associates time;

(13) costs of comparable services;

(14) use (or lack thereof) of paralegals; and

(15) duplication of efforts.

11 U.S.C. § 506(b) authorizes the court in appropriate cases involving oversecured creditors' claims to award compensation for reasonable fees and expenses of attorneys pursuant to an agreement between debtors and creditors. The compensation is to be reasonable, for economy in administration is the basic objective. While these standards are generally invoked as to professionals retained by debtors-in-possession and the trustee, they may be applied to applications under 506(b). *In re Wonder Corp. of America*, 82 B.R. 186 (D.Conn.1988). (Federal

rather than state law governs reasonableness of oversecured creditor's request for fees and expenses). Compensation is to be for actual, necessary services based on, inter alia, time spent, the nature, the extent and the value of the services rendered, and the cost of comparable services in nonbankruptcy cases. *See,* Bankruptcy Rule 219(c)(1); *Cle–Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863, 868 (6th Cir.1974), *cert. denied,* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53; *In re U.S. Golf Corp.,* 639 F.2d 1197 (5th Cir.1981).

■ In bankruptcy cases, professional fees are not a matter for private agreement. There is an inherent "public interest" that "must be considered in awarding fees." *Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d 429, 432 (5th Cir.1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220. The issue of the validity of a contractual agreement allowing attorney's fees is not the same as the issue of reasonableness of fees. *In re Wonder Corp.,* 82 B.R. at 189. An allowance is the result of a balance struck between moderation in the interest of the estate and its creditors and security holders and the need to be "generous enough to encourage" attorneys and others to render the necessary and exacting services that bankruptcy cases often require. *In re Yale Express System, Inc.,* 366 F.Supp. 1376, 1381 (S.D.N.Y.1973). Compensation in private employment noted in 11 U.S.C. § 330(a) is a point of reference, not a controlling determinant of what shall be allowed in bankruptcy cases. Only fees reasonably believed to be necessary to the protection of the creditor's interests are recoverable. *Matter of Lagasse,* 71 B.R. 551 (Bankr. D.Conn.1987).

■ The court is under the duty to determine independently the reasonableness of fees charged by professionals against a debtor's estate, even if there are no objections by parties in interest. 11 U.S.C. §§ 329, 330 and 503(b); *In re Microwave Products of America, Inc.,* 102 B.R. 661 (Bankr. W.D.Tenn.1989); *In re Johnson,* 21 B.R. 217 (Bankr.Ct.D.D.C.1982); *In re Bush,* 131 B.R.

364 (Bankr.W.D.Mich.1991); *In re CVC, Inc.,* 120 B.R. 874 (Bankr.N.D.Ohio 1990); (*In re Crutcher Transfer Line, Inc.,* 20 B.R. 705 (Bankr.Ct.W.D.Ky.1982)). The U.S. Trustee has filed a written objection to this fee request. The thrust of the U.S. Trustee's objection is based on, inter alia, excessive lawyer conferencing, lumping of time entries, excessive research on routine issues, over-lawyering,[3] and time improperly spent on appellate matters where First Tennessee either was not directly involved or was providing advisory services.

■ The burden of proof in all fee matters is on the applicant. *In re Swartout,* 20 B.R. 102, 9 B.C.D. 313 (Bankr.Ct.S.D.Ohio 1982), and citation therein; *In re Underground Utilities Construction Co., Inc.,* 13 B.R. 735 (Bankr.Ct.S.D.Fla.1981); *In re Olen,* 15 B.R. 750, 8 B.C.D. 555 (Bankr.Ct. E.D.Mich.1981). Of particular concern, the court should attempt to avoid double compensation for duplication of services. *In re West Electronics, Inc.,* 158 B.R. 37 (Bankr. D.N.J.1993); *Cle–Ware Industries, Inc. v. Sokolsky, supra.* The fee requested should be justified by more than merely the number of hours spent. *In re Hotel Associates, Inc.,* 15 B.R. 487 (Bankr.Ct.E.D.Pa.1981). A fee applicant, therefore, should document all services by itemized records which indicate the substance of tasks performed, *In re Doyle–Lumstra Sales Corporation,* 19 B.R. 1003 (D.S.D.1982), though the court may take judicial notice of the court record and infer reasonableness therefrom. *In re Underground Utilities Construction Co. Inc., supra.* However, the volume of activity is not necessarily a primary indicia of reasonableness.

■ The Court generally commends the attorneys for high-caliber work in litigating difficult cases involving debtors with substantial scheduled and controverted assets or complex legal issues. It must be noted that while this case had substantial litigation which consumed much time and energy, when distilled to its core, it was a chapter 7 case involving several routine motions. This

---

**3.** Three attorneys worked on the case at the hourly rate listed:

| | |
|---|---|
| Harris P. Quinn, Partner | $138.60 |
| Stephen W. Ragland, Associate | $105.00 |
| Sean M. Haynes, Associate | $ 71.40 |

case presented no complex and varied legal questions, notwithstanding the extent of the litigation and the volume of the case file.

The U.S. Trustee and the attorney for the Trustee have strongly argued that the activity on behalf of First Tennessee has been excessive and unreasonable under the particular facts and circumstances of this case. After fully reviewing the application, this Court independently finds that considering the totality of the facts and circumstances, the amount fees are not reasonable.

The itemization of the applicants' time records indicates that most of the services rendered were of a type normally charged to a debtor's estate. The court, however, takes exception of various degrees with several items charged.

 Some believe that under 506(b) an oversecured creditor may obtain all fees and costs it reasonably believe necessary for protection of its collateral. *See, In re Continental Vending Machine Corp.*, 543 F.2d 986 (2d. Cir.1976); *In re United Merchants and Manufacturers, Inc.*, 674 F.2d 134 (2d Cir. 1982). These cases hold that the standard for reasonableness is a subjective one. This Court disagrees, as such a policy goes against the fundamental congressional policies underlying bankruptcy, to preserve the estate for the benefit of unsecured creditor. This Court believes that the better view is that expressed in *In re Wonder Corp. of America*, 82 B.R. 186 (D.Conn.1988).

The court in *Wonder Corp., supra*, dealt with the issue on appeal of reasonableness of attorney fees and expenses pursuant to § 506(b). The *Wonder* court on appeal affirmed the criteria used by the bankruptcy court to determine reasonableness of fees claimed by Chase Manhattan Bank. The court stated:

Chase also challenges the specific factors chosen by the bankruptcy court to assess the reasonableness of Chase's claims. The bankruptcy court cited nine factors that should be considered under § 506(b): (1) the legal services must be authorized by the loan agreement; (2) they must be necessary to the promotion of the client's interests; (3) they must be permitted under applicable law including the Bankruptcy Code; (4) they must be compatible with the policy underlying the Bankruptcy Code; (5) the time spent must be appropriate to the complexity of the task; (6) the hourly rate must be appropriate under applicable standards; (7) the tasks must have been assigned to fewest and least senior attorneys able to render the services in a competent and efficient manner; (8) the fee should be adjusted to reflect duplicative services rendered by attorneys representing other parties with a common interest in the case; and (9) the fee should be adjusted to reflect the court's observation of the nature of the case and manner of its administration. *Wonder Corp. of America*, 72 B.R. [580] at 588–89 [ (Bankr.D.Conn. 1987) ].

Noting the similarity of these factors to those used in judging claims for administrative expenses under 11 U.S.C. § 330, Chase argues that the bankruptcy court confused the standard for fees under § 506(b) with that of 330. Section 330 governs the allowance of fees provided for the benefit of the estate. The factors a court considers in determining reasonable fees under § 303 include the time, labor, and skill required, novelty and difficulty of questions presented, results obtained, and the amounts of fees in similar cases. Because contractually based claims for fees are independent of fees allowed under § 330 of the Code, the factors used to determine reasonable fees under § 506(b) need not be the same as those for fees under § 330. *[Matter of ] Salisbury*, 58 B.R. [635] at 640 [ (Bankr.D.Conn.1985) ]. However, the use of some or even all of these factors is not improper as an indication of reasonableness under § 506(b).

The bankruptcy court's use of these nine factors did not reflect the application of a rigid test, but rather the factors served as guidelines as to what constituted reasonable fees under the circumstances. The nine factors in fact are simply an articulation of several quite straightforward principles underlying the requirements of § 506(b): The fees must be claimed pursuant to a contractual agreement; the time for which fees are claimed must have been

spent prudently and efficiently with an eye towards the overarching policy of avoiding the waste of the debtor's estate; and the court, relying on its accumulated expertise and familiarity with such matters, may evaluate the complexity of the case and the skill and efficiency with which it was handled. The bankruptcy court's articulation of these factors as guidelines to determine a reasonable fee, against the backdrop of apparent duplication of services and attempted obstruction by Chase, was appropriate and useful to its determination. (Citation omitted).

*Id.* at 191.

The Court acknowledges the zealousness of counsel for First Tennessee in protecting their clients' interest. However, the Court is troubled by the amount of attorney time dedicated to First Tennessee's narrow interest in the case; the number of attorneys working on the case; the number of intra-office and other conferences in the case; the lumping of tasks and time entries in the fee application; and the use of attorney time for certain ministerial tasks, such as filing documents with the Court, or checking with the clerk regarding the filing of certain documents, which ordinarily can be delegated to a para professional.

■ Generally, attorneys should work independently, without the incessant "conferencing" that so often forms a major part of many fee petitions. *In re Pettibone Corp.*, 74 B.R. 293 (Bankr.N.D.Ill.1987). Ordinarily, the estate should not bear the expense of compensating multiple attorneys at intra-office conferences, unless counsel can show that the estate benefitted from some special area of expertise from the respective attorneys. *In re Microwave Products of America, Inc.,* 102 at 665.

■ Further, in the instant case, given the routine nature of the case, and given First Tennessee's stature as a secured creditor in possession of its collateral, and given the fact that counsel for First Tennessee does extensive work in the banking area, the Court finds the amount of compensation attributed to attorneys researching the method of perfection for a Certificate of Deposit or a Time Deposit Account must be substantially reduced.

Where a number of separate tasks are performed on a single day, the fee application does not disclose the time spent on each task, thereby making it difficult for the court to assess the reasonableness of the time allocated to certain activities.

■ Further, there are several entries where attorneys are billing for largely clerical activity such as checking with the deputy clerk to verify document filing or document receipt. Where such tasks may be performed by a clerical or a para professional, compensation at the full attorney rate cannot be countenanced.

■ Lastly, counsel for First Tennessee acknowledged spending some time advising counsel for Hannah on procedural matters relating to Hannah's perfecting its appeal to which First Tennessee then responded. While this conduct is laudable, the unsecured creditors should not bear the economic brunt of this heightened sense of professional comity. Procedurally, the course of conduct regarding a defective appeal is to move to have it dismissed. Therefore, the Court cannot justify the exorbitant amount of time expended with respect to the matters surrounding the appeal.

The Court is quite mindful that much of the litigation in this case was driven by the creditor, Thomas Barrett Hannah. However, all litigants were required to exercise restraint in conserving the estate, even oversecured creditors.

■ The Court must consider the amount of fees requested in proportion to the amount of First Tennessee's secured claim. While the Court does not doubt that First Tennessee's attorneys engaged in all the work set forth in its petition, given the totality of the facts and circumstances, the fees cannot be considered reasonable. Fees may be allowed to an oversecured creditor under § 506(b). Reasonableness in the context of 506(b) has two facets: the amount of the fees must be reasonable and the creditor's or the attorneys' actions must be reasonable. *In re West Electronics, Inc.,* 158 B.R. 37 (Bankr. D.N.J.1993).

Based on the judicial experience of this Court in collections work, the fees generally range from 30–50% of the amount collected. These percentages can be loosely analogized to the instant case. Here the fees exceed 100% of the total amount of the debt in a situation where the bank, an oversecured creditor, at all times was in possession of its collateral. Moreover, even after the Court granted relief from the stay to liquidate collateral, more than 120 hours were spent protecting the Bank's position between January 1993 and October 1993. While the Bank was free to assert all bona fide claims before the bankruptcy court, the Bank was not entitled to saddle the debtor with all the attorney's fees and expenses incurred so as to absorb the balance of the funds to the detriment of the estate. *See, In re West Electronics, Inc.,* 158 B.R. 37 (Bankr.D.N.J.1993). To award the total fees requested by First Tennessee would be manifestly unjust, and would unduly prejudice unsecured creditors of the estate.

Based on the foregoing, the Court sustains the U.S. Trustee's objection and awards fees to counsel for First Tennessee in the amount of $15,000, which represents approximately one-half (½) of the requested fees. This represents a more reasonable amount in light of the facts and circumstances of this case. For example, in *Wonder Corp., supra,* the applicant filed a fee application for $188,240 in connection with an oversecured claim of $1.7 million. Finding that the requested fees were unreasonable, the Court reduced the fee award to $49,823 for total fees costs to a total of $25,000 for fees and expenses. The balance of the funds in First Tennessee's attorneys escrow account, in excess of $15,-000 should be remitted to the Trustee within 15 days.

**IT IS SO ORDERED.**