**In re Karin–Marie LUND, Debtor.**

**Bankruptcy No. 93 B 05219.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 7, 1995.

---

James A. Slowikowski, Marshall N. Dickler, Ltd., Arlington Heights, IL, for Collen Court Condominium Association.

Martin J. Weisenburger, Cohen, Weisenburger and Challos, Chicago, IL, for Karin–Marie Lund, debtor.

Jack McCullough, Chapter 13 Standing Trustee, Chicago, IL.

M. Scott Michel, United States Trustee, Chicago, IL.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the claim of Collen Court Condominium Association (the "Creditor") and the objection thereto by Karin–Marie Lund (the "Debtor"). For the reasons set forth herein, the Court allows the claim in part, and partially sustains the objection. The claim is allowed as an oversecured claim pursuant to 11 U.S.C. § 506(b) in the principal amount of $13,-313.26 for assessments, late charges, and fines, plus the sum of $13,313.26 in reasonable compensation for attorneys' fees and $2,130.75 for reimbursement of expenses incurred by the Creditor, plus simple interest at the annual rate of 8 percent. The Debtor's objection that the portion of the claim for attorneys' fees is excessive is sustained, as is her objection to the administrative priority of the claim asserted under 11 U.S.C. § 503(b).

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### II. FACTS AND BACKGROUND

#### A. History of State Court Litigation and Bankruptcy Case

The Debtor has an ownership interest in a condominium unit commonly described as Unit 2–123, 1320 Lore Lane, Lombard, Illinois (the "unit"). The Creditor is a condominium unit owners' association organized

pursuant to a declaration and bylaws establishing a plan for condominium ownership. *See* Creditor's Exhibit No. 2 and Debtor's Exhibit No. 2. The declaration was filed pursuant to the Illinois Condominium Property Act. *See* 765 ILCS 605/1 *et seq.* Various covenants contained in the declaration are supplemented by rules and regulations for unit members governing the operation and maintenance of the entire condominium project. *See* Creditor's Exhibit No. 3. All units, including the Debtor's unit, are subject to the provisions of the declaration, the rules and regulations, and the Illinois Condominium Property Act.

The declaration and the rules and regulations require all unit owners to pay to the Creditor their proportionate share of common maintenance assessments, plus a late charge of $25.00 if not paid by the 15th day of each month. *See* Creditor's Exhibit No. 2, Article VI and Creditor's Exhibit No. 3, p. 1. Moreover, the declaration provides that all expenses of the Creditor, in connection with any action to enforce against any violation or default of the declaration, including court costs, attorneys' fees and other fees and expenses, shall be charged against the defaulting owner. *See* Creditor's Exhibit No. 2, Article VI, Section 7 and Article XI, Section 1. Both the declaration and the Illinois Condominium Property Act provide that the Creditor has a lien against the unit for unpaid assessments, late charges, 8 percent interest (per the declaration), and attorneys' fees and costs for collection. *See* 765 ILCS 605/9; Creditor's Exhibit No. 2, Articles VI and XI. Thus, the Creditor's claim is secured by virtue of its lien on the Debtor's unit.

From January 1986 through April 1995, the Creditor's delinquent statement of account for the Debtor's unit included various charges for unpaid monthly assessments, special assessments, repairs, late charges, and legal fees and collection charges, totaling $31,405.52. *See* Creditor's Exhibit No. 1. The Debtor contests all of the late charges, legal fees, and collection charges. She did not pay all of the assessments, though her account was credited with payments made on several occasions. *See* Creditor's Exhibit No. 1.

Years prior to the bankruptcy petition, the Creditor filed suit against the Debtor in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois. The Creditor sued for injunctive and declaratory relief and foreclosure and sale of the unit. The Creditor asserted that the Debtor, as purchaser, and the contract sellers of the unit violated certain covenants in the declaration by allowing the unit to become overrun with roaches and vermin, and permitting garbage and trash to accumulate, thereby creating health and fire hazards. *See* Creditor's Exhibit Nos. 4 and 5. The state court entered a temporary restraining order on January 11, 1991, and subsequently granted a preliminary injunction. *See* Creditor's Exhibit Nos. 6 and 7. The state court made several findings regarding the unit, including that: it was infested with roaches; it sustained a water leak which necessitated shutting off heat to the unit, for which access was needed to exterminate and make necessary repairs, but was blocked by trash, boxes, furniture, and mattresses; and the neglect and deterioration caused such noxious conditions to exist entitling the Creditor to injunctive relief. The Debtor was ordered to remove the boxes, mattresses, and debris to allow necessary repairs and extermination by a date certain.[1]

Several months later, the Creditor amended the state court complaint to include a count to foreclose its statutory lien for the unpaid assessments, interest, late charges, and attorneys' fees and costs, which were claimed to then total $15,789.43. *See* Creditor's Exhibit Nos. 8 and 11. Some preliminary skirmishing on the pleadings ensued with no other dispositive results. *See* Creditor's Exhibit Nos. 12 and 13. Shortly thereafter, the Debtor filed her answer to the amended state court complaint, admitting that the unit condition was on a "temporary basis, cluttered and congested but such condition has now been completely remedied." *See* Creditor's Exhibit No. 14. The Debtor further contended that the preliminary in-

---

1. The state court's findings against the Debtor, embodied in the temporary restraining order and the preliminary injunction, are entitled to full faith and credit here. *See* 28 U.S.C. § 1738.

junction required her "in essence, to clean out her kitchen, bathrooms and other areas of her Unit to allow repairs to heat registers and to allow access by an exterminator." *Id.* The answer stated that the Debtor had complied with the preliminary injunction and had gone even further in cleaning, restoring, and refurbishing her unit than required; that the items complained of had now been corrected, and as a result, the Creditor's complaint had become moot. *Id.* Additional subsequent pleadings were filed. *See* Creditor's Exhibit Nos. 16–19. A proposed agreed order or consent decree was not entered because of continuing disagreements between the parties. *See* Creditor's Exhibit No. 20.

No further substantive orders were entered by the state court prior to the Debtor filing her Chapter 13 petition on March 10, 1993.[2] The Creditor moved to modify the automatic stay of 11 U.S.C. § 362(a) and objected to the Debtor's Chapter 13 plan. The Court overruled that objection, but granted partial stay relief on June 25, 1993, which allowed the Creditor to proceed with any action in state court for injunctive relief to enjoin any violations of the declaration. The Court denied the Creditor's motion to proceed in state court for determination of attorneys' fees and costs, as well as its lien foreclosure. On July 9, 1993, the Court confirmed an amended Chapter 13 plan which provided for sixty months of payments by the Debtor with an estimated dividend of 5 percent for her prepetition unsecured creditors' claims.

On August 13, 1993, the Creditor filed a proof of claim in the amount of $40,510.01[3], to which the Debtor filed an objection. *See* Debtor's Exhibit No. 3. The Debtor had scheduled the Creditor's claim at $6,000.00 for unpaid assessments. The Debtor objects

to the Creditor's contention that it is entitled to an administrative priority under 11 U.S.C. § 503(b), and to the amount of fees and costs requested as excessive. The Court held a full trial on the contested claim, which concluded on July 27, 1995.[4] The matter was thereafter taken under advisement.

### B. *Summary of the Creditor's Claim*

The original proof of claim filed by the Creditor in this case did not specify the components with any particularity. The subsequent papers filed and the documentary exhibits admitted into evidence, however, show those components, summarized below, after crediting the Debtor with various payments received:

$ 7,031.42 — Prepetition common monthly maintenance assessments and special assessments ($6,206.42), late charges ($725.00), and extermination fine ($100.00) exclusive of attorneys' fees and litigation expenses (Response to Objection, Mladenoff Affidavit, ¶ 5);

$ 6,281.84 — Postpetition common monthly maintenance assessments, special assessments, late charges, and other charges exclusive of attorneys' fees and expenses (Debtor's Proposed Findings of Fact and Conclusions of Law, ¶ 1);

$41,006.00 — Attorneys' fees charged by Marshall N. Dickler, Ltd. to the Creditor for prepetition and postpetition services in both the state court litigation and all matters before the bankruptcy court (Response to Objection, Dickler Affidavit, p. 28, ¶ 2; Dickler Supplemental Affidavit, p. 5, ¶ 2); and

$ 2,709.05 — Costs advanced by Creditor's attorneys in both state court and bankruptcy court matters (Dickler Affidavit, p. 28, ¶ 3; Dickler Supplemental Affidavit, p. 5, ¶ 3).

---

2. This case was originally assigned to the Honorable Eugene R. Wedoff, then reassigned to the undersigned judge effective January 1, 1995.

3. The Creditor acknowledges that there was an inadvertent error made in calculating the amount, and that the actual amount should be $40,240.97. This figure is at odds with the ending amount balance shown on Creditor's Exhibit No. 1. Thus, the Creditor's various pleadings are at some variance and difficult to reconcile on the exact amount now claimed due. This has made

the Court's job of ascertaining the exact amount claimed due difficult at best.

4. Prior to completion of the testimony, the Creditor renewed its motion to lift the automatic stay *in rem* against the unit for the Debtor's failure to make all postconfirmation monthly assessment installments as required under her plan. Because of her admitted failure to make such payments, that motion was granted on April 28, 1995.

Thus, the total of the components of the Creditor's prepetition and postpetition claim against the Debtor now appears to aggregate the sum of $57,028.31.[5]

### C. *Summary of the Debtor's Objection to the Claim*

The Debtor objects to all the prepetition monthly late charges ($725.00) assessed against her account, the allowance of postpetition monthly and special assessments and late charges, all attorneys' fees, and the prepetition special assessment or fine of $100.00 for the roach extermination. The gist of the objection is that the attorneys' fees are unreasonably excessive, as a result of: (1) duplicative and cumulative services rendered by the attorneys; (2) unnecessarily excessive time expended pre-lawsuit; (3) overstated and excessive court appearance time; (4) "lumping" of various time entries without separately breaking out the time spent for each discrete task performed; (5) additional fees charged which were not part of the filed proof of claim, some of which are lumped; and (6) unnecessary research. Like the Creditor's claim, the Debtor's objection has also been a moving target because as the claim total increased, the objection has varied, but not in any arithmetic or geometric proportion.[6]

### III. *SUMMARY OF THE TESTIMONY*

Barbara Mladenoff testified as the account manager of the managing agent for the Creditor. She identified the account summary for the Debtor's unit. *See* Creditor's Exhibit No. 1. For each month for which there was an unpaid balance for assessments, attorneys' fees, or other charges, after the 15th day of the month, a $25.00 late charge was assessed and added to the balance due.

Although the Debtor's account was substantially brought current through September 1990, an arrearage began to accrue thereafter with only one payment made from February 1991 until July 1993. The charges to the account included a $100.00 extermination charge and all the attorneys' fees and expenses incurred by the Creditor. Because the Debtor did not pay those disputed items, a monthly $25.00 late charge was added to the balance due.

Dennis Beckman, president of the Creditor's board of managers, supported the Creditor's contention that the assessments levied against the Debtor were in accord with the declaration and with the rules and regulations of the Creditor. Assessments were made pursuant to the annual budget, approved by the board of directors, under which all unit owners pay their prorated share of utility costs and common area maintenance expenses. Beckman verified and authorized the state court action against the Debtor, which he said had the support of the board, notwithstanding lack of notice to the Debtor or a formal board resolution (none was required under the declaration (Article XI, ¶ 1)). Access to the unit was obtained only after the injunctions were issued. Beckman, a licensed realtor-appraiser, testified that the unit's value ranged from $64,000-65,000.

Marshall Dickler also testified. Dickler's law firm represented the Creditor both before the state court and this Court. To his knowledge, the time slips of Dickler and his six associates who worked on the matters accurately reflect the time spent and services rendered. In Dickler's opinion, the state court action was not an easy or simple case, but required the services and expertise of more than one attorney. Dickler opined that all the work performed was reasonable and

---

5. As stated in footnote 3, the Court is uncertain whether this figure is correct because it has been a moving target. The amount increases monthly by at least the $25.00 late charge which accrues when the full balance is not paid, and by additional attorneys' fees. The exact amount of the Creditor's total claim does not need to be precisely determined, however, because of the result reached herein in light of the Debtor's objection.

6. This fee dispute should have been pleaded in the format prescribed by Local Bankruptcy Rule 607, which the Court can discretionarily apply to this matter via Local Rule 607(F). Compliance therewith would have made the Court's job much easier and less time consuming. The Court, however, will not exercise its discretion under Local Rule 607(E) to reduce the fees for failure to comply with the requirements of the Rule.

necessary and not duplicative in light of his experience. Many conferences were had between Dickler and his associates to update on the status of the matter as it developed, and to strategize to determine the best way to prosecute the matter and anticipate defense delays and tactics. Dickler stated that a substantial amount of travel time was included for the round trips between Dickler's Arlington Heights law offices and the state court facility in Wheaton.

Michael Scalzo, the Debtor's attorney in the state court action, also testified. Scalzo had advised the Debtor to rectify the water pipe and other conditions in the unit. According to Scalzo, those issues were completely resolved by mid-March 1991, after the Debtor belatedly brought the unit into compliance per the injunction orders. Thereafter, two issues remained unresolved: (1) the hotly disputed Creditor's attorneys' fees and expenses, which the Debtor resisted paying; and (2) the foreclosure of the Creditor's lien and eviction of the Debtor from the unit.

Scalzo testified that the disputed attorneys' fees made the matter difficult to settle. In Scalzo's opinion, the requested fees are not reasonable because the Creditor's attorneys devoted unnecessary time, effort, and resources to pursue the matter, which could have been settled through negotiations, had a request to correct the conditions of the unit been first made, rather than the filing of the state court action. He further testified that at one time, the Debtor had agreed to settle the disputed fees for the sum of $6,000.00, but the settlement was never effectuated because of what he described as additional terms providing for waivers by the Debtor, which were considered too onerous. Although Scalzo conceded that his opponents were always well prepared, in his opinion, much of the preparation was unnecessary, and the pleadings and briefs were too voluminous for a matter that, but for the fees, was essentially resolved in March 1991.

## IV. *APPLICABLE STANDARDS*

Section 506(b) of the Bankruptcy Code governs allowance of fees and expenses of oversecured creditors and provides in relevant part:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, *there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.*

11 U.S.C. § 506(b) (emphasis supplied).

### A. *Attorneys' Fees*

■ To substantiate a claim for attorneys' fees under § 506(b), the Creditor must satisfy four requirements in order for those fees and costs to be allowed as part of its claim: 1) the Creditor must have an allowed secured claim; 2) the claim must be oversecured; 3) the underlying documents must provide for such fees and costs; and 4) the fees and costs must be reasonable. *See In re Wire Cloth Products, Inc.*, 130 B.R. 798, 814 (Bankr. N.D.Ill.1991); *In re Stoecker*, 114 B.R. 980, 983 (Bankr.N.D.Ill.1990); *In re Josephs*, 108 B.R. 654, 656 (Bankr.N.D.Ill.1989). The burden of proof is on the Creditor. *In re Danise*, 112 B.R. 492 (Bankr.D.Conn.1990); *In re Harman Supermarket, Inc.*, 44 B.R. 918 (Bankr.W.D.Va.1984). The Creditor has a secured claim (allowed by this Opinion) which is oversecured. The only testimony on value of the unit shows it to be greater than the amount of the claim. It is undisputed that the declaration provides for fees and costs to be borne by unit owners such as the Debtor. Thus, the Creditor can seek to recover accruing postpetition fees, assessments, and expenses within the parameters of § 506(b).

■ The remaining issue is whether the Creditor's request for fees and costs is "reasonable" as mandated by § 506(b). In making a determination of reasonableness, the Court does not look to state law, but rather, makes an independent evaluation. *See In re 268 Ltd.*, 789 F.2d 674, 677 (9th Cir.1986); *Unsecured Creditors' Committee 82–00261c–11A v. Walter E. Heller & Co. Southeast, Inc.*, 768 F.2d 580 (4th Cir.1985).[7] Reason-

---

7. The state case law cited by the Creditor, though interesting and somewhat helpful, is inapposite and not binding or controlling.

ableness has two facets: 1) the fees must be reasonable, and 2) the Creditor's actions must be reasonable. *In re West Electronics, Inc.*, 158 B.R. 37, 40 (Bankr.D.N.J.1993). The Court should look at whether the Creditor's "fees and costs fall within the scope of the fee provision, whether the [Creditor] took the kind of reasonable actions a similarly situated creditor would have taken, and whether such actions and fees were outside the range so as to be deemed unreasonable." *Id.* at 41–42 (citing *In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987)). The Court has broad discretion to determine what constitutes a "reasonable" fee. *In re Mills*, 77 B.R. 413, 419 (Bankr.S.D.N.Y.1987). As Judge Wedoff opined:

> In exercising this discretion, courts have been wary of the potential for abuse of an oversecured creditors' right to attorneys' fees and costs. As one often-quoted passage puts it, "[a] rule of reason must be observed in order to avoid [fee shifting] clauses from becoming a tool for wasteful diversion of an estate at the hands of secured creditors, who, knowing that the estate must foot the bills, fail to exercise restraint in enforcement expenses."

*Josephs*, 108 B.R. at 656 (citations omitted).

The Creditor is free to assert all bona fide claims, but "is not necessarily entitled to saddle the debtor with all the attorney's fees and expenses incurred so as to impede the debtor's ability to reorganize." *In re Masnorth Corp.*, 36 B.R. 335, 339 (Bankr.N.D.Ga. 1984). Allowable fees and expenses must be reasonable under the facts and circumstances of the case. *In re Davidson Metals, Inc.*, 152 B.R. 917 (Bankr.N.D.Ohio 1993). An oversecured creditor should not be given a "blank check to incur fees and costs which will automatically be reimbursed out of its collateral." *Dalessio*, 74 B.R. at 723; *cf. In re Nicfur–Cruz Realty Corp.*, 50 B.R. 162, 169 (Bankr.S.D.N.Y.1985) (oversecured creditor's fees must be cost justified). Some cases have spoken to the proportionate amount of the fees sought in relation to the principal amount of the creditor's claim, exclusive of such fees. A legal fee which was nearly one-third of the creditor's claim was held not to be reasonable or economically prudent in *In re Smith*, 109 B.R. 421 (Bankr. D.Mont.1988), in contrast to a legal fee of approximately 10 percent of the balance due on a mortgage, which was found justified. *See In re Norman*, 41 B.R. 8 (Bankr. M.D.Ala.1984).

■ Several factors that must be considered (which have been reviewed here) in determining the reasonableness of fees under § 506(b) are: 1) time and labor required; 2) novelty and difficulty of questions; 3) skill requisite to perform legal services; 4) preclusion of other employment by acceptance of the case; 5) customary fee; 6) whether the fee sought is fixed or contingent; 7) time limitations; and 8) the amount involved and results achieved. *In re Calzaretta*, 35 B.R. 92, 94 (Bankr.N.D.Ill.1983); *see also In re Mid–State Fertilizer Co.*, 83 B.R. 555, 557 (Bankr.S.D.Ill.1988). Courts frequently disallow or reduce fees sought by secured creditors on finding that the work performed was unnecessary or excessive. *See, e.g., In re Kroh Bros. Dev. Co.*, 105 B.R. 515, 529–30 (Bankr.W.D.Mo.1989); *Mid–State Fertilizer*, 83 B.R. at 557; *In re Wonder Corp. of America*, 82 B.R. 186, 192 (D.Conn.1988). The *Mid–State Fertilizer* case is noteworthy for its reduction of fifty percent of the requested fees, where the court found that the oversecured creditor's counsel spent an excessive amount of time in protecting and preserving the collateral, charged excessive amounts of time for conferences, and employed an unnecessary number of law firms and attorneys.

■ The Court will also consider some of the same factors it uses when analyzing fee requests submitted under Section 330 of the Bankruptcy Code. *See generally In re Lederman Enter. Inc.*, 106 B.R. 674, 679 (Bankr. D.Colo.1989). "Lumping" of services into one time entry is disapproved of by courts because it prevents a court from determining the necessity of each service and whether the time expended on individual items was reasonable. Courts faced with lumped time entries have either (1) denied the compensation requested for such time expended, *see, e.g., In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 750–51 (Bankr.E.D.N.Y.1995), or (2) made an adjustment for all of the lumped

time entries reducing compensation for such entries by a certain percentage. *See, e.g., In re Adventist Living Centers, Inc.*, 137 B.R. 701, 706 (Bankr.N.D.Ill.1991) (lumped fees reduced by fifty percent). Although each matter must be judged on its peculiar facts and circumstances, the Court will not compensate multiple firm members attending court hearings or meetings where there is no showing of specific facts compelling the necessity for attendance and active participation by all firm members at the event. *See In re Pettibone Corp.*, 74 B.R. 293, 303 (Bankr.N.D.Ill.1987).

### B. *Reimbursement of Expenses*

■ What constitutes a "reasonable" expense is not defined under the text of § 506(b), the Creditor's declaration, or its rules and regulations. Extant case law decided under Sections 330 and 331 of the Bankruptcy Code provides helpful analogous authority. The Creditor bears the burden of establishing that it is entitled to certain expenses. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr.N.D.Ill.1989); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr. W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D.Ill.1985). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *In re Wildman*, 72 B.R. 700, 731 (Bankr.N.D.Ill.1987). Expenses are to be reimbursed, not to add to profit. *See Wire Cloth*, 130 B.R. at 809 n. 3. "Actual costs and expenses reasonably and necessarily incurred are reimbursable and subject to allowance by the Court but not in amounts which include any profit or mark up factor to the applicant." *In re Prairie Central Ry.*, 87 B.R. 952, 960 (Bankr.N.D.Ill.1988).

### V. *DISCUSSION*

The Supreme Court has aptly noted, in another context, that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The heart of this contested claim, like the unresolved and ongoing foreclosure and injunction action in the state court, is the Creditor's attorneys' fees, which the Creditor seeks to pass on to the Debtor.

What began as correction of a relatively inexpensive health and safety problem with the unit by requiring obviously needed roach extermination, clean up of debris, and repair of a water leak—all of which were accomplished between January and March 1991— has mushroomed into a running battle lasting well into 1995 over how much of the Creditor's attorneys' fees and other expenses should be taxed to the Debtor. Once again, bitter recalcitrance of the parties has produced a thorny problem for the Court to decide. Both sides have some merit to their respective positions. As a result, the claim is allowed in part, and the objection thereto is sustained in part. The Court will discuss each component of the Creditor's claim in turn.[8]

### A. *Assessments and Late Charges*

■ The Debtor's objection to the prepetition and postpetition assessments, both regular and special, and the late charges is not well-founded and is overruled. Article VI of the declaration requires unit owners to pay their respective pro rata share of costs for maintenance and operation of the common elements of the condominium. *See* Creditor's Exhibit No. 2, pp. 24–29. Failure to pay within the time prescribed subjects the owner to late charges, collection costs and fees, which, if unpaid, can become a lien against the unit and foreclosed. *Id.* at pp. 42–44. The Illinois Condominium Property

**8.** The Creditor asserts that its claim should be given administrative priority pursuant to § 503(b). Section 503(b), however, does not afford administrative priority to the Creditor's claim. In order to receive administrative priority, the Creditor's claim must have arisen postpetition. Clearly, the claim arose prepetition. The Debtor's nonpayment of the demanded assessments, late charges, fees, and expenses began

years prior to the bankruptcy case. That she persisted postpetition in nonpayment does not elevate the claim to priority under § 503(b). The Creditor's claim does not fit within any of the subparagraphs of § 503(b) for the various categories of administrative claims allowable under that section. Section 503(b) is irrelevant and inapplicable in this matter. Section 506(b) is the appropriate and applicable controlling statute.

Act further provides a statutory lien against the unit in favor of and in addition to the Creditor's rights under the declaration. *See* 765 ILCS 605/9. Moreover, where the debtor has specifically agreed to pay late charges, and those charges are reasonable, courts have allowed same to an oversecured creditor. *See, e.g., In re LHD Realty Corp.*, 726 F.2d 327, 333 (7th Cir.1984); *Mack Financial Corp. v. Ireson*, 789 F.2d 1083, 1084 (4th Cir.1986); *In re Presque Isle Apartments, L.P.*, 112 B.R. 744, 748–49 (Bankr.W.D.Pa. 1990); *In re Melbell Assoc., Inc.*, 99 B.R. 31, 34 (Bankr.E.D.Cal.1989).

The parties have not disputed the amounts of the unpaid prepetition assessments, monthly and special, totaling $6,206.42, or those accrued and unpaid postpetition, totaling $6,281.84 through April or May 1995. The Debtor challenges the late charges of $25.00 per month, the $100.00 roach extermination charge, and contends that the postpetition assessments are not properly part of the Creditor's allowable claim. The Court rejects this contention. Section 506(b) expressly provides that the Creditor shall be allowed these charges, if provided for under the agreement under which its claim arose.

The evidence was uncontroverted that the Debtor failed to pay many of the monthly assessments. *See* Creditor's Exhibit No. 1. The Creditor's declaration provides for interest of 8 percent per annum on unpaid damages (which would include unpaid assessments), fees, and costs. *See* Creditor's Exhibit No. 2, Articles VI and XI. Moreover, the Creditor's rules and regulations establish a late charge of $25.00 for monthly assessments not paid by the 15th of each month. *See* Creditor's Exhibit No. 3, p. 1. The Court finds that these documents specifically provide for the assessments and late charges. When the Debtor consensually acquired her ownership interest in the unit, she did so subject to the obligations imposed on all unit owners under the declaration and the rules

and regulations by which the condominium is operated. Similarly, the proof is uncontroverted that the Debtor was given notice in November 1990, that all units were to be sprayed for pest control on December 8, 1990, and that if the exterminator could not then gain access to the unit, a $100.00 fine would be assessed. *See* Creditor's Exhibit No. 5: (1) Affidavit of Kim Coomer, property manager; (2) notice dated November 29, 1990 from Debbie Peck, property manager, of mandatory spraying of all units; and (3) written consent signed by the Debtor authorizing access to the exterminator to spray the unit. Based upon Creditor's Exhibit No. 5, the Court finds that the Debtor agreed to allow the exterminator access to the unit to spray, and that she knew that if access was not allowed, a $100.00 charge would be made to her account.

Thus, the issue of the reasonableness of the late charges and extermination charge remains. The Court finds that the late charges assessed for failure to pay the assessments when due are reasonable. These charges are not excessive and apply uniformly to all unit owners who become delinquent in payment of their monthly assessments. The Court also finds that the $100.00 charge for the Debtor's failure to allow the Creditor timely access to the unit to exterminate is also a reasonable charge.[9] Consequently, these charges are hereby allowed portions of the Creditor's secured claim.

### B. *Attorneys' Fees*

■ The Debtor mainly objects to the attorneys' fees as being excessive and therefore unreasonable. The Debtor contends that the Creditor's attorneys rendered duplicative services by multiple members of the law firm, "lumped" many time entries, and conducted numerous unnecessary conferences. Pointedly, the Debtor posits that the expenditure of attorney time totaling $41,-

---

9. The Court rejects the argument that the $100.00 charge for the Debtor's failure to allow the exterminator access to the unit constitutes a fine or charge for the extermination, which was discriminatorily imposed upon her. Based upon Creditor's Exhibit No. 5, the Debtor was on notice of, and agreed to, a $100.00 charge for failure to allow the exterminator access to the

unit. Thus, the Court rejects the Debtor's contention that this charge should be disallowed on the basis that only she was charged to have her unit exterminated. There has been no showing that other unit owners did not timely provide access to their units, but were not fined. The record is devoid of any evidence to show that the Debtor was singled out for disparate treatment.

006.00 to collect an approximate $13,000.00 debt is patently unreasonable. The Court agrees in part and therefore substantially sustains such objection.

True enough, the genesis of the dispute was the roach and trash problem, which either the Debtor created or allowed to develop. Thus, the Debtor should bear the "reasonable" costs and fees incurred by the Creditor in rectifying those health and safety problems. But, this does not mean that all the fees are automatically taxable against the Debtor via § 506(b). There are limits—measured by the standard of reasonableness—to what an oversecured creditor can receive under § 506(b). Some of the services performed in this matter were duplicative, unnecessary, and excessive. Hence, not all of the fees charged are reasonable and properly compensable under § 506(b).

As piling on is not permitted by the rules of football, neither is it allowed under § 506(b) to the taxing of an oversecured creditor's attorneys' fees to a debtor. This matter, involving the roach extermination, trash and debris removal, and water leak repair of the unit, involved neither difficult nor complicated issues of fact or law. Any experienced attorney could have achieved the results obtained in state court on these facts. As the Debtor notes, much of the work performed was duplicative and involved excessive and unnecessary conferencing. All attorneys, including those representing oversecured creditors, are expected to perform their services independently without incessant conferring, which occurred on over sixty separate occasions in this matter. *See Pettibone*, 74 B.R. at 303. Hence, the Court hereby disallows the following entries for conferencing as unnecessary, excessive, and consequently unreasonable:

| DATE SERVICE EXPENDED | PERSON PERFORMING SERVICE | HOURS EXPENDED | HOURLY RATE | AMOUNT DISALLOWED |
|---|---|---|---|---|
| 01/14/91 | MND | .50 hours | $115.00 | $57.50 |
| 01/23/91 | MRE | .50 hours | $100.00 | $50.00 |
| 04/24/91 | JAG | .30 hours | $100.00 | $30.00 |
| 07/25/91 | JG | .30 hours | $100.00 | $30.00 |
| 08/08/91 | JG | .30 hours | $100.00 | $30.00 |
| 09/25/91 | JG | .50 hours | $100.00 | $50.00 |
| 10/22/91 | MND | .50 hours | $115.00 | $57.50 |
| 11/04/91 | MRE | .50 hours | $100.00 | $50.00 |
| 12/12/91 | LHB | .20 hours | $100.00 | $20.00 |
| 01/13/92 | LHB | .30 hours | $100.00 | $30.00 |
| 02/04/92 | LHB | 1.0 hours | $100.00 | $100.00 |
| 02/24/92 | MRE | .40 hours | $100.00 | $40.00 |
| 02/26/92 | MRE | .30 hours | $100.00 | $30.00 |
| 08/18/92 | JAG | .40 hours | $100.00 | $40.00 |
| 08/19/92 | JAG | .90 hours | $100.00 | $90.00 |
| 08/19/92 | MRE | .90 hours | $100.00 | $90.00 |
| 10/06/92 | MND | .40 hours | $115.00 | $46.00 |
| 11/30/92 | JAS | .50 hours | $100.00 | $50.00 |
| 12/17/92 | MND | .30 hours | $115.00 | $34.50 |
| 01/05/93 | JAG | .60 hours | $100.00 | $60.00 |
| 03/10/93 | MND | 1.0 hours | $115.00 | $115.00 |
| 03/10/95 | MND | .60 hours | $115.00 | $69.00 |
| 03/14/95 | JAS | .70 hours | $100.00 | $70.00 |
| 04/05/95 | JAS | .50 hours | $100.00 | $50.00 |
| 04/11/95 | JAS | .50 hours | $100.00 | $50.00 |
| 04/21/95 | MND | 1.0 hours | $115.00 | $115.00 |
| 04/25/95 | MND | .50 hours | $115.00 | $57.50 |
| 04/27/95 | JAS | .50 hours | $100.00 | $50.00 |
| **TOTAL** | | **14.90 hours** | | **$1,562.00** |

The complaint and motion seeking temporary and preliminary injunctive and foreclosure relief were more than amply supported by adequate fact specific affidavits of the condominium's property manager, the president of its board of managers, a maintenance worker, and the exterminator, establishing the health and safety problems and condition of the unit. In the parlance of a contract bridge, entry of those orders was a virtual lay down in light of such evidence. There is no showing in the record here of any hotly contested factual issues or difficult issues of law that would require the services of up to six attorneys from the same law firm.

The Creditor failed to demonstrate an adequate justification for sending two lawyers to court on multiple occasions. It is both an inefficient and an expensive practice to send to court Lita Brody (LHB), experienced in substantive condominium law, and Michael Ek (MRE), experienced as a litigator, each billing at the rate of $100.00 per hour, rather than Dickler himself, for example, knowledgeable in both areas, billing at the rate of $115.00 per hour.[10] The Court flatly rejects Dickler's suggestion that this matter required the simultaneous services of two or more attorneys, or required his constant oversight and strategic planning to the extent rendered. As an elephant is not needed to swat a fly, neither was a virtual squad of attorneys needed to obtain the orders to exterminate the roaches, clean up the debris and fix the water leak. As a result, the following duplicative time expended is hereby disallowed:

| DATE SERVICE EXPENDED | PERSON PERFORMING SERVICE | HOURS EXPENDED | HOURLY RATE | AMOUNT DISALLOWED |
|---|---|---|---|---|
| 01/15/91 | LHB | 4.0 hours | $100.00 | $400.00 |
| 01/22/91 | MRE | 2.50 hours | $100.00 | $250.00 |
| 02/21/92 | MRE | 2.50 hours | $100.00 | $250.00 |
| **TOTAL** | | **9.0 hours** | | **$900.00** |

Furthermore, the numerous times throughout the application that the Creditor's attorneys request fees for revising and reviewing various documents demonstrates the possibility that such a plethora of revisions was necessitated by a level of competence less than that reflected by the hourly billing rates. The Creditor's attorneys charge for reviewing various documents without adequately explaining the purpose or necessity for such review. Where such information is not provided, the Court cannot determine whether such task was "reasonable." As Judge Grady aptly noted:

The primary defect of the lodestar approach is its emphasis on the quantity of hours expended as a basis for arriving at a reasonable attorneys' fee. Because of this emphasis on hours worked, the lodestar methodology penalizes efficiency and creates a disincentive to resolve cases at the earliest appropriate opportunity.

*In re Continental Illinois Securities Litigation,* 750 F.Supp. 868, 878 (N.D.Ill.1990) (citations omitted), *rev'd on other grounds,* 962 F.2d 566 (7th Cir.1992). For this reason, the Court hereby disallows the following time entries as an unreasonable and unnecessary expenditure of time:[11]

---

**10.** The rates charged are both reasonable and well within the wide range of fees charged by practitioners before this Court, and have not been challenged.

**11.** Some of the entries contain "lumped" services. The Court was unable to allocate the amount of time expended on each task. Consequently, the entire entry was disallowed.

| DATE SERVICE PERFORMED | PERSON PERFORMING SERVICE | TIME EXPENDED | HOURLY RATE | AMOUNT DISALLOWED |
|---|---|---|---|---|
| 04/30/91 | LHB | .20 hours | $100.00 | $20.00 |
| 05/20/91 | LHB | .50 hours | $100.00 | $50.00 |
| 05/22/91 | LHB | 2.50 hours | $100.00 | $250.00 |
| 06/16/91 | LHB | 1.0 hours | $100.00 | $100.00 |
| 07/17/91 | LHB | .50 hours | $100.00 | $50.00 |
| 08/06/91 | LHB | .80 hours | $100.00 | $80.00 |
| 08/07/91 | LHB | .30 hours | $100.00 | $30.00 |
| 10/16/91 | LHB | 1.80 hours | $100.00 | $180.00 |
| 01/03/92 | LHB | 3.0 hours | $100.00 | $300.00 |
| 01/06/92 | LHB | 3.0 hours | $100.00 | $300.00 |
| 02/07/92 | LHB | .90 hours | $100.00 | $90.00 |
| 02/11/92 | LHB | .40 hours | $100.00 | $40.00 |
| 01/13/92 | LHB | .50 hours | $100.00 | $50.00 |
| 02/19/92 | LHB | .50 hours | $100.00 | $50.00 |
| 02/20/92 | MRE | 2.0 hours | $100.00 | $200.00 |
| 02/24/92 | MRE | .50 hours | $100.00 | $50.00 |
| 02/25/92 | LHB | 1.0 hours | $100.00 | $100.00 |
| 03/11/92 | LHB | .60 hours | $100.00 | $60.00 |
| 03/12/92 | LHB | 2.20 hours | $100.00 | $220.00 |
| 04/15/92 | LHB | .30 hours | $100.00 | $30.00 |
| 04/17/92 | LHB | .60 hours | $100.00 | $60.00 |
| 04/27/92 | MRE | .50 hours | $100.00 | $50.00 |
| 05/21/92 | MND | .30 hours | $115.00 | $34.50 |
| 07/18/92 | MND | .30 hours | $115.00 | $34.50 |
| 08/31/92 | JAG | .30 hours | $100.00 | $30.00 |
| 09/01/92 | JAG | .20 hours | $100.00 | $20.00 |
| 10/07/92 | JAS | .30 hours | $100.00 | $30.00 |
| 10/22/92 | JAS | .30 hours | $100.00 | $30.00 |
| 10/26/92 | JAS | .50 hours | $100.00 | $50.00 |
| 12/18/92 | JAS | .40 hours | $100.00 | $40.00 |
| 12/21/92 | JAS | .90 hours | $100.00 | $90.00 |
| 03/05/93 | JAS | 1.0 hours | $100.00 | $100.00 |
| 03/10/93 | JAS | 3.0 hours | $100.00 | $300.00 |
| 02/02/95 | MND | .50 hours | $115.00 | $57.50 |
| 02/24/95 | JAS | .30 hours | $100.00 | $30.00 |
| 03/10/95 | JAS | 1.0 hours | $100.00 | $100.00 |
| 03/21/95 | JAS | .20 hours | $100.00 | $20.00 |
| 04/10/95 | JAS | .30 hours | $100.00 | $30.00 |
| 04/24/95 | JAS | .20 hours | $100.00 | $20.00 |
| 07/24/95 | MND | .50 hours | $115.00 | $57.50 |
| TOTAL DISALLOWED | | 34.10 hours | | $3,434.00 |

Moreover, as noted by the Debtor, the request for fees is replete with "lumped" time entries. Such a practice prevents the Court from determining the necessity of each service and whether the time expended on each task was reasonable. Lumping several activities into a single time entry may result in an appropriate denial or reduction of compensation. *See Pettibone,* 74 B.R. at 302; *Adventist Living Centers,* 137 B.R. at 706. The following entries are the most egregious examples of "lumping":

| DATE SERVICE PERFORMED | PERSON PERFORMING SERVICE | HOURS EXPENDED | HOURLY RATE | AMOUNT CHARGED |
|---|---|---|---|---|
| 12/13/90 | JAG, LHB | 1.0 hours | $100.00 | $100.00 |
| 12/14/90 | LHB | .90 hours | $100.00 | $90.00 |
| 12/14/90 | MND | .50 hours | $115.00 | $57.50 |
| 01/07/91 | LHB | 3.30 hours | $100.00 | $330.00 |
| 01/09/91 | LHB | .80 hours | $100.00 | $80.00 |
| 01/10/91 | LHB | 1.0 hours | $100.00 | $100.00 |

| DATE SERVICE PERFORMED | PERSON PERFORMING SERVICE | TIME EXPENDED | HOURLY RATE | AMOUNT DISALLOWED |
|---|---|---|---|---|
| 01/11/91 | MND | .90 hours | $115.00 | $103.50 |
| 01/14/91 | SRB | 1.60 hours | $100.00 | $160.00 |
| 01/14/91 | LHB | .60 hours | $100.00 | $60.00 |
| 01/17/91 | LHB | 4.40 hours | $100.00 | $440.00 |
| 01/22/91 | LHB | .70 hours | $100.00 | $70.00 |
| 01/22/91 | LHB | 3.50 hours | $100.00 | $350.00 |
| 01/23/91 | LHB | 1.40 hours | $100.00 | $140.00 |
| 03/22/91 | MND | .40 hours | $115.00 | $46.00 |
| 04/24/91 | LHB | 2.60 hours | $100.00 | $260.00 |
| 06/17/91 | LHB | .60 hours | $100.00 | $60.00 |
| 07/14/91 | LHB | 3.0 hours | $100.00 | $300.00 |
| 07/25/91 | LHB | 1.50 hours | $100.00 | $150.00 |
| 03/09/92 | LHB | 1.70 hours | $100.00 | $170.00 |
| 03/24/92 | LHB | 1.50 hours | $100.00 | $150.00 |
| 05/28/92 | MRE | 1.20 hours | $100.00 | $120.00 |
| 08/18/92 | MRE | .80 hours | $100.00 | $80.00 |
| 08/26/92 | MRE | .50 hours | $100.00 | $50.00 |
| 08/31/92 | MRE | 1.30 hours | $100.00 | $130.00 |
| 09/02/92 | MRE | 3.0 hours | $100.00 | $300.00 |
| 12/08/92 | JAS | .50 hours | $100.00 | $50.00 |
| 12/09/92 | JAS | .80 hours | $100.00 | $80.00 |
| 12/17/92 | JAS | 1.20 hours | $100.00 | $120.00 |
| 01/04/93 | JAS | 4.30 hours | $100.00 | $430.00 |
| 01/05/93 | JAS | 4.60 hours | $100.00 | $460.00 |
| 01/06/93 | JAS | .80 hours | $100.00 | $80.00 |
| 01/09/93 | JAS | 2.50 hours | $100.00 | $250.00 |
| 01/11/93 | JAS | 5.50 hours | $100.00 | $550.00 |
| 01/12/93 | JAS | 6.60 hours | $100.00 | $660.00 |
| 01/19/93 | JAS | .50 hours | $100.00 | $50.00 |
| 02/10/93 | JAS | 1.50 hours | $100.00 | $150.00 |
| 02/11/93 | JAS | .70 hours | $100.00 | $70.00 |
| 04/05/95 | MND | 1.0 hours | $115.00 | $115.00 |
| 04/26/95 | MND | 1.50 hours | $115.00 | $172.50 |
| **TOTAL** | | **70.70 hours** | | **$7,134.50** |

---

The Court will only allow fifty percent of this amount ($3,567.25) because the Court is unable to ascertain whether the amount of time spent on the many services lumped into each entry was in fact reasonable.

In addition, the Court finds that the amount of time spent drafting, preparing, and presenting the temporary restraining order and injunction was excessive and thus unreasonable. Three attorneys expended a total of 46 hours [12] on a noncomplex matter.[13]

12. More time was expended on this particular task, but the Court did not include this time as it has already been included in other areas of disallowance.

13.

| DATE SERVICE PERFORMED | PERSON PERFORMING SERVICE | HOURS EXPENDED | HOURLY RATE | AMOUNT CHARGED |
|---|---|---|---|---|
| 12/18/90 | LHB | 2.50 hours | $100.00 | $250.00 |
| 01/03/91 | LHB | 4.20 hours | $100.00 | $420.00 |
| 01/05/91 | LHB | 1.0 hours | $100.00 | $100.00 |
| 01/07/91 | LHB | 4.50 hours | $100.00 | $450.00 |
| 01/08/91 | LHB | 2.0 hours | $100.00 | $200.00 |
| 01/11/91 | LHB | 5.50 hours | $100.00 | $550.00 |
| 01/14/91 | MRE | 2.7 hours | $100.00 | $270.00 |
| 01/15/91 | MRE | 4.0 hours | $100.00 | $400.00 |
| 01/15/91 | MND | 1.1 hours | $115.00 | $126.50 |

The expenditure of this much time was simply overkill. Accordingly, the Court will allow only approximately half of the time expended, or $2,323.00.

Furthermore, there is an obvious lack of billing judgment as proscribed by *Pettibone*, 74 B.R. at 303. For example, on the eve of the scheduled state court trial on the permanent injunction, the Creditor's attorneys prepared, filed, and briefed a motion for summary judgment for which they expended approximately 26 hours.[14] The amount of time expended in the preparation and presentment of the motion was excessive, and hence, not reasonable. The motion was ultimately denied because of the presence of disputed issues of fact relating to the subject fees and expenses. All such work was to no avail, and the Court finds that the Debtor should not be taxed with the cost. The remaining factual disputes, at that point before the summary judgment motion was filed and briefed, could have been tried in the state court in far less time. Accordingly, none of the $2,615.00 in fees will be allowed.[15]

Additionally, the Court will not allow the time charged by Dickler on 04/27/95 for 7.80 hours and on 07/27/95 for 9.0 hours at $115.00 per hour, for a requested total of $1,932.00. On those dates, Dicker expended time preparing, waiting, and testifying in court as a witness in this contested matter. Dickler's testimony on the witness stand lasted approximately one hour. He was then acting as a witness rather than practicing law as an attorney. Clearly, the expenditure of over 16 hours for one hour of testimony is excessive and not reasonable. This is just another egregious example of the Creditor's attorneys "running the meter". Therefore, the Court will only allow 4 of the 16 hours expended (1 hour for testimony, 1 hour for preparation, and 2 hours for travel time from Arlington Heights, Illinois to Chicago). Accordingly, the Court hereby disallows $1,472.00 and allows $460.00.

A further example of the Creditor's attorneys' excessive expenditure of time relates to the drafting of the proposed order for the preliminary injunction. Three attorneys reviewed the proposed order for a total expenditure of $570.00 (5.70 hours at $100.00 per

| DATE SERVICE PERFORMED | PERSON PERFORMING SERVICE | HOURS EXPENDED | HOURLY RATE | AMOUNT CHARGED |
|---|---|---|---|---|
| 01/17/91 | MRE | 1.4 hours | $100.00 | $140.00 |
| 01/17/91 | MRE | 8.0 hours | $100.00 | $800.00 |
| 01/17/91 | LHB | 1.0 hours | $100.00 | $100.00 |
| 01/18/91 | LHB | 8.0 hours | $100.00 | $800.00 |
| 01/21/91 | MRE | .40 hours | $100.00 | $40.00 |
| **TOTAL** | | **46.30 hours** | | **$4,646.50** |

14. More time was expended on this task, but the Court disallowed those entries in other areas.

15. The Court arrived at this figure by adding the time expended on the following dates by the various attorneys and staff:

| DATE SERVICE PERFORMED | PERSON PERFORMING SERVICE | HOURS EXPENDED | HOURLY RATE | AMOUNT DISALLOWED |
|---|---|---|---|---|
| 10/23/91 | LHB | 4.0 hours | $100.00 | $400.00 |
| 10/24/91 | LHB | 3.40 hours | $100.00 | $340.00 |
| 10/25/91 | LHB | 2.80 hours | $100.00 | $280.00 |
| 10/25/91 | TME | .50 hours | $50.00 | $25.00 |
| 11/04/91 | LHB | 1.0 hours | $100.00 | $100.00 |
| 01/13/92 | MRE | .80 hours | $100.00 | $80.00 |
| 01/16/92 | LHB | 1.80 hours | $100.00 | $180.00 |
| 01/17/92 | LHB | 3.0 hours | $100.00 | $300.00 |
| 01/20/92 | LHB | 2.3 hours | $100.00 | $230.00 |
| 01/29/92 | TME | .40 hours | $50.00 | $20.00 |
| 02/04/92 | MRE | 1.3 hours | $100.00 | $130.00 |
| 02/05/92 | MRE | 2.5 hours | $100.00 | $250.00 |
| 02/21/92 | LHB | 2.80 hours | $100.00 | $280.00 |
| **TOTAL** | | **26.60 hours** | | **$2,615.00** |

hour).[16] This amount of time expended by three members of the firm drafting and reviewing a proposed order is unreasonable. The Court will allow only two hours or $200.00 in fees for this task. Hence, $370.00 is hereby disallowed.

In addition, the Court hereby finds some unnecessary strategizing by the Creditor's attorneys to be unreasonable and will not allow the following charges:

| DATE SERVICE PERFORMED | PERSON PERFORMING SERVICE | HOURS EXPENDED | HOURLY RATE | AMOUNT DISALLOWED |
|---|---|---|---|---|
| 02/06/95 | MND | .60 hours | $115.00 | $69.00 |
| 02/07/95 | JAS | .40 hours | $100.00 | $40.00 |
| 03/14/95 | MND | 1.0 hours | $115.00 | $115.00 |
| 03/24/94 | MND | .60 hours | $115.00 | $69.00 |
| 04/10/95 | MND | .60 hours | $115.00 | $69.00 |
| 04/11/95 | MND | .90 hours | $115.00 | $103.50 |
| 04/28/95 | MND | .50 hours | $115.00 | $50.00 [17] |
| 07/27/95 | JAS | .50 hours | $100.00 | $50.00 |
| TOTAL | | 5.10 HOURS | | $565.50 |

The Debtor's undisputed defaults and failure to timely pay all assessments and fees and costs do not entitle the Creditor to a blank check to be drawn on her account for all of the Creditor's attorneys' fees. Scalzo's testimony was unrebutted that these health and safety conditions were remedied by mid-March 1991, approximately two months after the state court suit was filed and the temporary and preliminary injunctions issued. Much of the time expended after March 1991 was with respect to the dispute over the attorneys' fees. Subsequent to that date, the Creditor's attorneys expended approximately 118.20 hours or $12,176.50 in fees. The Court finds that such an excessive expenditure of time does not constitute a "reasonable" charge under § 506(b). Fiduciaries and their representatives seeking reasonable and necessary fees payable from bankruptcy estates under § 330 have been recently reminded that they have a duty to forebear attempting to collect a particular asset if the cost of collection exceeds the asset's value, and fees incurred, which greatly exceed same, should be substantially reduced. *See In re Taxman Clothing Co.*, 49 F.3d 310, 315–16 (7th Cir.1995). That principle of cost-benefit analysis bears consideration when applying § 506(b), which expressly qualifies and limits by reasonableness the fees allowed to oversecured creditors.

To saddle the Debtor with all the Creditor's attorneys' fees for persisting in her resistance to payment of unreasonably excessive fees would be inequitable and inappropriate. All the disallowances discussed above total $16,809.25. That amount subtracted from the $41,006.00 total attorneys' fees sought reduces the balance to $24,196.75. The Court finds that this amount is still simply excessive and hence unreasonable. Further reduction is necessary to reach an equitable result.

16. The Court arrived at this figure by adding the following time expended:

| DATE SERVICE PERFORMED | PERSON PERFORMING SERVICE | HOURS EXPENDED | HOURLY RATE | AMOUNT DISALLOWED |
|---|---|---|---|---|
| 01/14/91 | SRB | 1.50 hours | 100.00 | $150.00 |
| 01/15/91 | SRB | .40 hours | 100.00 | $40.00 |
| 01/21/91 | LHB | 2.10 hours | 100.00 | $210.00 |
| 01/21/91 | MRE | .50 hours | 100.00 | $50.00 |
| 01/21/91 | MRE | 1.20 hours | 100.00 | $120.00 |
| TOTAL | | 5.70 hours | | $570.00 |

17. The Court is aware that the expenditure of .50 hours at $115.00 per hour does not equal $50.00, but, rather, totals $57.50. However, the Creditor's attorneys charged only $50.00. Thus, the Court will utilize this amount as well.

A more reasonable sum in light of all the facts and evidence is $13,313.26, an amount equal to the total of the proven unpaid prepetition and postpetition assessments, late charges, and fine. Balancing the equities militates in favor of a result limiting the fee award to the aggregate amount of the principal elements of the claim. To allow all the fees sought, more than triple the principal of the total claim, absent the fees, skews the dispute and turns the client's basic claim into its lawyers' quest into the opponent's pocketbook for the legal fees. At the very least, this dispute over the subject fees has degenerated from the proverbial tempest in a teapot to a midwestern tornado between attorneys' attaché cases. The Creditor's attorneys' overzealous pursuit of the Debtor should be appropriately limited by this Court. The Debtor's failure to tender the accruing postpetition regular, monthly assessments has caused the Creditor to incur additional fees for which the Debtor should pay, but certainly not all or even a majority of the excessive fees sought to be taxed to her.

### C. Expense Reimbursement

█ The Creditor seeks a total of $2,709.05 for its attorneys' expenses. The Court finds that the Creditor has established the reasonableness of all of the expenses, except the photocopying charge. The Creditor seeks reimbursement of $1,156.60 [18] for photocopying, which its attorneys charge at 20 cents per page. Dickler testified, however, that the law firm's actual cost is only approximately 10 cents per page. Thus, there is a fifty percent mark up or profit margin factored in. Hence, the Court hereby cuts this expense request in half and only allows $578.30. The purpose of expense reimbursement is not for the applicant to profit, but for it to be reimbursed its actual out-of-pocket cost. *Wire Cloth,* 130 B.R. at 809 n. 3. Hence, the sum of $2,130.75 is allowed for the Creditor's attorneys' expenses.

### D. Summary of the Allowed Claim

To award all the requested fees totaling $41,006.00, plus costs, is grossly disproportionate to the underlying monetary claim of

the Creditor totaling approximately $13,-000.00. Thus, the Court holds on these facts that the expenditure of over $41,000.00 in attorneys' fees to collect a $13,000.00 claim is patently unreasonable. The requested fees dwarf the rest of the claim. To allow all of them would let the tail wag the dog—an inappropriate result. In short, the Court allows, in part, the claim of the Creditor in the sum of $28,757.27 plus simple interest at the annual rate of 8 percent. The Court derived that total based on the following components: (a) assessments and late charges of $13,313.26; (b) attorneys' fees of $13,313.26; and (c) reimbursed costs of $2,130.75.

### VI. CONCLUSION

For the foregoing reasons, the Court hereby allows the Creditor's claim in part in the total sum of $28,757.27 plus 8 percent simple interest per year. The balance of the claim is denied and the Debtor's objection thereto is sustained in part.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### ORDER

For the reasons set forth in a Memorandum Opinion dated the 7th day of September, 1995, the Court hereby allows the claim of Collen Court Condominium Association in part, and partially sustains the objection thereto by the Debtor. The claim is allowed as an oversecured claim pursuant to 11 U.S.C. § 506(b) in the principal amount of $13,313.26 for assessments, late charges, and fines, plus the sum of $13,313.26 in reasonable compensation for attorneys' fees and $2,130.75 for reimbursement of expenses incurred by Collen Court Condominium Association, plus simple interest at the annual rate of 8 percent. The Debtor's objection that the portion of the claim for attorneys' fees is

---

18. The Creditor originally sought $919.10 for photocopying. It supplemented its fees and expenses request with an additional charge of $237.50 for photocopying. This additional charge has been "lumped" with the facsimile charge. Because the Court is unable to discern between the two charges, it will assume that the entire $237.50 sum constitutes photocopying.

excessive is sustained, as is her objection to the administrative priority of the claim asserted under 11 U.S.C. § 503(b).